# EXHIBIT A

# Germ Plasm Transfer, Royalty, and Working Agreement

Duplicate KA 22 March 2016 KA

Made and entered into on the ~~19~~ day of ~~January~~, ~~2017~~, by and between
Legacy Hemp LLC, hereafter referred to as "THE AGENT"
11609 Dawson Springs Rd
Crofton, KY, 42217 USA
AND

Terramax Holding Corporation, hereinafter referred to as Terramax,
Box 390
Qu'Appelle, Saskatchewan, Canada S0G 4A0

For the purposes of this agreement the phrase "specified States of the USA" shall refer to Kentucky, Illinois, Minnesota, Iowa, North Dakota, Nebraska, Indiana, and such other states as mutually agreed in writing by Terramax and THE AGENT.

Whereas Terramax is engaged in the field of proprietary maintenance, production and sale of X59 (Hemp Nut) hemp seed (hereafter referred to as "the variety"); and
Whereas THE AGENT is engaged in seed maintenance, production, marketing and sales of seed varieties in the USA; and
Whereas THE AGENT and Terramax wish to enter into an agreement in accordance to which THE AGENT will receive seed of the variety from Terramax to produce commercial seed therefrom, from which to sell seed into the specified States of the USA, and to pay Terramax annual royalties pursuant to the terms and conditions of this agreement.
Now therefore the parties agree as follows:

1. The intent of this agreement is that Terramax grants exclusive licence to THE AGENT within the specified States of the USA for the maintenance, multiplication, and marketing of the variety.
2. THE AGENT shall endeavour to take all necessary measures to maintain proprietary control of the seed increases in the interests of THE AGENT and Terramax.
3. THE AGENT shall use its best efforts and maintain an aggressive programme to promote the sale of the variety in the specified States of the USA. Seed of the variety shall not be marketed into States that do not strictly require the use of only certified hemp seed for planting or allow farmer saved hemp seed.
4. THE AGENT will have the right to appoint sub-licensees to increase and market the variety in order to maximise returns.
5. THE AGENT shall pay a royalty fee to Terramax on all quantities of seed sold of the variety. A royalty shall be established at USD$0.30 per pound. Payment of Terramax royalty shall be made by the 30th day of the month following the date of sale of the seed of the variety. The payment shall be accompanied by a detailed statement of quantities sold by THE AGENT and its sub-licensee
6. THE AGENT shall do its utmost to produce and maintain the certified seed and production at the highest levels of quality.
7. THE AGENT shall enable any representative of Terramax to visit the area of production and view and sample any of the stored seed production of the variety as they may wish with prior notice.
8. Upon Terramax's request, THE AGENT shall enable Terramax to review and inspect, by an accountant appointed by Terramax, all records of THE AGENT relating to this agreement.
9. Where plant varieties protection rights (PVR) are registered in the USA, pertaining to this variety, it shall be registered in the name of Terramax.
10. All procedural requirements in order to maintain the registration of the variety, once registered, will be fulfilled by THE AGENT. Copies of all documents and correspondence relating thereto will be forwarded to Terramax.
11. The proprietary rights of the variety shall remain in the sole ownership of Terramax.
12. THE AGENT undertakes not to sell, transfer, or in any way dispose of genetic material of the variety, and shall take all reasonable measures to prevent such a transfer to third parties.
13. This agreement shall commence on the date of signature hereof, and shall extend for a seven (7) year period, subject to the terms and conditions of this agreement. Renewal for continued periods will be by mutual agreement.
14. Either party shall be entitled to terminate this agreement before the end of its term in the event that the other party:
    i. Is in default of its obligations hereunder, which has not been cured within thirty (30) days of written notice
    ii. Has become insolvent, or is in receivership, or is in the proceedings of bankruptcy.
    iii. There has been a transfer of controlling interest in THE AGENT's company.
15. Termination shall be by written notice to that effect.
16. Upon termination of this agreement, THE AGENT shall cease to market the variety as seed and dispose of remaining production in the commercial non-seed market.
17. Confidentiality: The parties and their employees, and or their affiliated companies, shall keep confidential all proprietary information and data pertaining to the variety and the sale thereof.
18. This agreement and any right or obligation thereunder, shall not be assigned to any other party by THE AGENT without the approval of Terramax.
19. This agreement shall be governed and construed in accordance of the legal system of the district of distribution.
20. In no event will either party be liable to the other party, or to any third party, for any indirect, special or consequential damages, which include without limitation, any loss of income or loss of profits.
21. If THE AGENT becomes aware or has any knowledge of unauthorized use of the variety THE AGENT shall promptly notify Terramax.
22. THE AGENT and its affiliates and sub-licensees undertake not to attempt to modify, alter, or replicate the variety outside the terms of this agreement.
23. THE AGENT shall not market any of the variety as seed outside the USA.
24. THE AGENT represents and warrants to Terramax that it has the knowledge, capacity, experience, resources, and expertise required to carry out its obligations hereunder in respect of all Terramax's requirements for the receiving, handling, purchase, sale, and processing of the licenced variety in accordance with good, current, modern and state of the art standards, practice and technology. THE AGENT further represents that it is authorized pursuant to all Applicable Laws to perform its obligations under this agreement.

IN WITNESS THEREOF, THE PARTIES HAVE HEREUNTO SIGNED:

Legacy Hemp LLC

By _____

Kenneth E. Anderson
(Print Name)

Date: 3-22-16

Place: Prescott WI USA

AND Terramax Holding Corporation

By _____

Hugh Campbell
(Print Name)

Date: 3-22-2016

Place: Qu'Appelle Saskatchewan

# EXHIBIT B



MILLER THOMSON

AVOCATS | LAWYERS

MILLER THOMSON LLP
BANK OF MONTREAL BUILDING
2103 - 11TH AVENUE, SUITE 600
REGINA, SK  S4P 3Z8
CANADA

T  306.347.8300
F  306.347.8350

MILLERTHOMSON.COM

January 2, 2020

**Via Email: ken@legacyhemp.com**

Legacy Hemp LLC
11609 Dawson Springs Rd.
Crofton, KY, 42217 USA

Attention:  Kenneth Anderson

Jeff N. Grubb, Q.C.
Direct Line: 306.347.8393
Direct Fax: 306.347.8350
jgrubb@millerthomson.com

File No.: 0173524.0009

Dear Sir:

Re:  X59 (Hemp Nut) Germ Plasm Transfer, Royalty and Working Agreement dated April 22, 2016 between Legacy Hemp LLC ("Legacy") and Terramax Holdings Corp. (the "Agreement")

We are legal counsel for Terramax Holdings Corp. ("Terramax").

We have been informed that Legacy is in breach of the Agreement as follows:

1. Legacy has sold X59 hemp seed outside of its authorized territory. Enclosed is an invoice Legacy provided to a customer in Montana. Legacy is not authorized to sell X59 hemp seed in Montana.

2. Legacy has failed to provide Terramax with detailed information regarding the sales of X59 hemp seed that it has made.

On behalf of Terramax and in accordance with the Agreement, we demand that within 30 days of the date of this letter that Legacy do the following:

A. Provide to us a sworn declaration by Kenneth Anderson of Legacy confirming as follows:

   i) That except for the X59 hemp seed sold to the customer in Montana as shown in the enclosed invoice, at no time has either Legacy or any sub-licensee designated by Legacy sold or distributed any X59 hemp seed outside of states specified in the Agreement (i.e. Kentucky, Illinois, Minnesota, Iowa, North Dakota, Nebraska, and Indiana); and

   ii) That from and after this date (i.e. January 2, 2020) neither Legacy nor any sub-licensee designated by Legacy will sell or distribute any X59 hemp seed outside of states specified in the Agreement (i.e. Kentucky, Illinois, Minnesota, Iowa, North Dakota, Nebraska, and Indiana) without firstly obtaining the written authorization of Terramax.

B. Provide to us a detailed list of <u>all</u> of the sales of X59 hemp seed made by Legacy from January 1, 2019 to date, including the name and contact information for each customer, the amount of X59 hemp seed sold to each customer, and the date of the sale to each customer.

Should Legacy refuse or fail to provide the above information to us within 30 days of the date of this letter, Terramax will consider Legacy to be in default under the Agreement and that it failed to cure such default. As a consequence Terramax will terminate the Agreement, including cancellation of Legacy's seed order mentioned below.

We also understand that Legacy has ordered 200,000 lbs of X59 hemp seed from Terramax for pick-up/delivery in April of this year (i.e. 2020). The price for such seed is $2.25 US per pound FOB Terramax's processing facility at Qu'Appelle, SK, Canada. In order to process your order, Terramax requires payment of a 10% deposit (i.e. $45,000 US), such to be paid to Terramax within 30 days of the date of this letter. The balance (i.e. $405,000 US) is to be paid at or prior to pick-up/delivery. No seed will be released without payment in full. Notwithstanding the foregoing, if Legacy refuses or fails to provide the information demanded in points A and B above within the allotted time, Terramax will terminate the Agreement, including cancellation of Legacy's 2020 seed order.

Yours sincerely,

MILLER THOMSON LLP

Per: *[signature]*

Jeff N. Grubb, Q.C.
JNG/az

Enclosure

c.  Terramax Holdings Corp. Attn: Hugh Campbell (via email)

44027230.1

44027230.1



Legacy Hemp, LLC
1303 Westview Dr
Suite 200
Hastings, MN 55033 US
accounting@legacyhemp.com

## Invoice

BILL TO
IND Hemp
PO BOX 940
Wolf Point, MD 59201

INVOICE # 1037
DATE 04/19/2019

| DATE | ACTIVITY | DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|---|---|
| 04/19/2019 | Seed Sales | | 60.000 | 3.30 | 198,000.00 |
| 04/19/2019 | Bagging Fee | | 1 | 1,980.00 | 1,980.00 |

PAYMENT              100,000.00
BALANCE DUE          **$99,980.00**

# EXHIBIT C



Larry A. Konopacki

222 West Washington Avenue, Suite 900
P.O. Box 1784
Madison, WI 53701-1784
lkonopacki@staffordlaw.com
608.259.2607

January 22, 2020

Via ~~Certified~~ Registered Mail:
Via Email: jgrubb@millerthomson.com

Jeff N. Grubb, Q.C.
Miller Thomson, LLP
Bank of Montreal Building
2103 - 11th Avenue, Suite 600
Regina, SK S4P 3ZB
Canada

RE:   Legacy Hemp, LLC and Terramax Holdings Corp. Matter

Dear Attorney Grubb:

We are attorneys for Legacy Hemp, LLC ("Legacy"). Mr. Ken Anderson forwarded to us for our review your letter dated January 2, 2020 regarding the March 22, 2016 contract between Legacy and Terramax. A copy of this contract is enclosed for your reference. The conclusions in your letter appear to be based on a simple misreading of this contract. We look forward to working with you to clear up any confusion in this matter and to continuing the mutually-beneficial relationship between Legacy and Terramax.

The contract provides Legacy with exclusive rights to sell X59 hemp seed in the following 7 states: Kentucky, Illinois, Minnesota, Iowa, North Dakota, Nebraska, and Indiana. The contract also provides Legacy with the nonexclusive right to sell X59 seed in the rest of the United States, pursuant to Sections 3 and 23 of the contract.

Not only is this clear from the face of the contract, it has also been the ongoing understanding of both parties since the execution of this deal. Some of the examples of communications and other actions by Terramax and Mr. Hugh Campbell that support this interpretation include the following:

- In March of 2017, Terramax emailed the director of the Colorado seed program stating that Legacy is "our agent in the U.S. for X59."

L:\DOCS\031554\000001\CORR\3M66432.DOCX
012220100110:49

| Madison Office | | Milwaukee Office | |
|---|---|---|---|
| 222 West Washington Avenue | 608.256.0226 | 1200 North Mayfair Road | 414.982.2850 |
| P.O. Box 1784 | 888.655.4752 | Suite 430 | 888.655.4752 |
| Madison, Wisconsin | Fax 608.259.2600 | Milwaukee, Wisconsin | Fax 414.982.2889 |
| 53701-1784 | www.staffordlaw.com | 53226-3282 | www.staffordlaw.com |

January 22, 2020
Page 2

- In February of 2018, Terramax forwarded to Legacy a request to purchase X59 seed made by Cornell University in New York, noting in the forwarded message that Legacy "might want to respond to this request."

- In March of 2018, Mr. Campbell forwarded to Legacy a request to purchase seed from a person "enrolled in the Montana Hemp pilot program."

- In a number of instances, Mr. Campbell has asked Legacy to address issues with possible illegal sales in states other than the 7 listed above. For example, despite Wisconsin not being one of the states in which Legacy holds exclusive X59 marketing rights, Mr. Campbell asked Legacy to deal with an issue in March of 2018 with a supposed researcher in Nevada that was attempting to sell X59 into Wisconsin and was telling farmers that they could use it for breeder seed.

- In April of 2018, Mr. Campbell forwarded to Legacy a request to purchase seed from a person who expressed "interest in growing your X-59 in Wisconsin."

- Last Summer, Legacy's agronomist, Brian Parr, gave a presentation *in Montana* for Ken Elliot and IND Hemp, at which Mr. Campbell and Tom Benson *were present*. In that presentation, Mr. Parr identified himself as the agronomist for Legacy, stated that Legacy was the supplier of the seed, and said that he was there to provide information to help the farmers purchasing seed from Mr. Elliot. Mr. Parr met with and discussed the particular sale of X59 seed to IND Hemp with Tom Benson and with Mr. Campbell separately. He spoke with Mr. Benson for approximately 45 minutes about this sale and stayed in touch with him throughout the season in regard to production problems that arose from time to time. He also spoke with Mr. Campbell for 10-15 minutes about this sale of seed into Montana.

- Ken Anderson met with Mr. Campbell in Canada last July, along with one of Legacy's employees. At that meeting, Mr. Anderson and Mr. Campbell discussed Legacy's X59 seed sales efforts in states other than its 7 exclusive states. The primary purpose of that discussion was for Mr. Anderson to express his concerns about the time and money he has spent raising the brand profile of X59 in states where *he does not hold exclusive rights*, by selling seed in these states and supporting buyers with Legacy's resources, despite the risk of Terramax authorizing more people to sell X59 in those states allowing them to reap the rewards of Legacy's efforts.

Your letter also asserts that Legacy has "failed to provide Terramax with detailed information regarding the sales of X59 hemp seed that it has made." In fact, Legacy has provided to Terramax all information required to be provided under the contract. Section 5 of the contract,

January 22, 2020
Page 3

which is the only contract provision that relates to reporting of information, simply requires Legacy Hemp to provide "a detailed statement of the quantities sold" by Legacy. This provision is also clear on its face. It does not require the reporting of any information other than quantities sold, which Legacy has provided.

However, In the interest of maintaining a good working relationship between Terramax and Legacy, Legacy is more than willing to provide information about the states in which it sold X59 seed and the quantities sold in those states. This information is enclosed. Legacy is also willing to comply with future reasonable requests for additional information that exceeds Legacy's contract obligations. All you or Terramax need do is ask.

Please also note that both Legacy and Terramax are bound by a mutual covenant of confidentiality Under Section 17 of the contract. This provision requires each party, their employees, and affiliated companies to "keep confidential all proprietary information and data pertaining to the variety and the sale thereof." Legacy will faithfully fulfill this obligation and expects that Terramax will do the same especially with respect to any information voluntarily provided by Legacy to Terramax as offered above, and to other information learned by Terramax about Legacy's business activities with respect to X59, regardless of the source of that information. This would certainly apply to the information contained in the invoice that you enclosed with your letter.

We strongly believe that U.S. Courts would find that there has been no breach of this contract by Legacy, based solely on the express terms of the contract itself (U.S. contract law would apply to this matter under Section 19 of the contract). Further, if there could be any doubt as to the contract's clear terms, such doubt would be erased when looking at the actions of Terramax and Legacy during the term of the contract. These actions clearly show Terramax's understanding of Legacy's right to non-exclusive sales in the U.S. outside of its exclusive area, examples of which are provided above.

When Mr. Anderson received your letter, he was quite surprised that Mr. Campbell had not reached out to him personally to discuss this, as they have had many direct communications and a number of face-to-face meetings over recent years and have a business relationship that Legacy sees as mutually beneficial and productive. All became clear recently when Mr. Ken Elliot, *a customer of Legacy*, contacted Legacy staff and informed them that he had purchased *exclusive* rights from Terramax to market X59 in 20 states. If what we were told is correct, this means that Terramax has entered into a contract with Mr. Elliot that Terramax does not have the authority to execute. If so, Legacy stands ready and willing to discuss options and is committed to being constructive in finding a mutually-agreeable solution to this problem. Ken Anderson asked that Hugh contact him directly to talk about how this issue can be resolved. If Legacy misunderstood Mr. Elliot, and Mr. Elliot only contracted for *non-exclusive* rights in those 20 states, then there should not be a problem since Legacy and Mr. Elliot can certainly compete for X59 sales in those states.

January 22, 2020
Page 4

However, over the last 3-plus years, Legacy has worked hard to protect this cultivar for Terramax. It has spent considerable time and money to that end. The actions taken by Legacy to help Terramax in that regard go far beyond the simple notification obligation under Section 21 of the contract. Unfortunately, continuing to do this is going to be impossible moving forward. When Legacy was the only authorized sales agent in the U.S., it was fairly easy to determine who was offering illegal sales. Now, Legacy simply will not know, at least with respect to sales outside of its exclusive 7 states, whether another sales offer was appropriately arranged through Mr. Elliot.

Lastly, with respect to Legacy's seed order, there was an apparent error or miscommunication. Legacy requested 60,000 lbs. of seed, not 200,000 lbs. However, your disappointing choice to bypass Legacy and deal with Legacy's customer directly has required them to re-evaluate their need for seed moving forward. This is because part of Legacy's X59 plans for the upcoming year were based on supplying Mr. Elliot and IND Hemp with seed. Legacy will re-assess its needs for seed and communicate with you in the upcoming weeks.

Moving forward, we trust that the information provided above has been sufficient to convince you of the correct interpretation of the respective rights and obligations of the parties under the contract, and therefore Legacy intends to continue to market X59 during the remaining term of the contract both in its 7 exclusive states and in other states where markets exist. If this is not correct, please either communicate with me or ask Mr. Campbell to contact Mr. Anderson directly as soon as possible so that we can engage further to bring this matter to resolution.

Sincerely,

STAFFORD ROSENBAUM LLP

Larry A. Konopacki

LAK:mai
Enclosures
cc: Ken Anderson, Legacy Hemp

| State | Pounds | |
|---|---|---|
| IL | 5,100 | |
| IN | 18,900 | |
| KY | 2,000 | |
| MN | 23,500 | Minus 1,225 used for seed production we paid a higher royalty for   for. |
| ND | 121,790 | Minus 35,350 used for seed production we paid a higher royalty for. |
| WI | 6,550 | |
| AL | 450 | |
| CA | 5,950 | |
| DE | 100 | |
| KS | 5,450 | |
| MI | 1,900 | |
| MT | 70,000 | |
| NC | 300 | |
| NY | 900 | |
| OK | 5,600 | |
| OR | 1,050 | |

TOTAL   269,540   Royalty paid on 234,190 because 35,350 was used for seed production because Terramax co

## Germ Plasm Transfer, Royalty, and Working Agreement

Duplicate [handwritten: 22 March 2016 KA]

Made and entered into on the __19__ day of __January__, __2014__, by and between
Legacy Hemp LLC, hereafter referred to as "THE AGENT"
11609 Dawson Springs Rd
Crofton, KY, 42217 USA
AND
Terramax Holding Corporation, hereinafter referred to as Terramax,
Box 390
Qu'Appelle, Saskatchewan, Canada S0G 4A0

For the purposes of this agreement the phrase "specified States of the USA" shall refer to Kentucky, Illinois, Minnesota, Iowa, North Dakota, Nebraska, Indiana, and such other states as mutually agreed in writing by Terramax and THE AGENT.

Whereas Terramax is engaged in the field of proprietary maintenance, production and sale of X59 (Hemp Nut) hemp seed (hereafter referred to as "the variety"); and
Whereas THE AGENT is engaged in seed maintenance, production, marketing and sales of seed varieties in the USA; and
Whereas THE AGENT and Terramax wish to enter into an agreement in accordance to which THE AGENT will receive seed of the variety from Terramax to produce commercial seed therefrom, from which to sell seed into the specified States of the USA, and to pay Terramax annual royalties pursuant to the terms and conditions of this agreement.
Now therefore the parties agree as follows:

1. The intent of this agreement is that Terramax grants exclusive licence to THE AGENT within the specified States of the USA for the maintenance, multiplication, and marketing of the variety.
2. THE AGENT shall endeavour to take all necessary measures to maintain proprietary control of the seed increases in the interests of THE AGENT and Terramax.
3. THE AGENT shall use its best efforts and maintain an aggressive programme to promote the sale of the variety in the specified States of the USA. Seed of the variety shall not be marketed into States that do not strictly require the use of only certified hemp seed for planting or allow farmer saved hemp seed.
4. THE AGENT will have the right to appoint sub-licensees to increase and market the variety in order to maximise returns.
5. THE AGENT shall pay a royalty fee to Terramax on all quantities of seed sold of the variety. A royalty shall be established at USD$0.30 per pound. Payment of Terramax royalty shall be made by the 30th day of the month following the date of sale of the seed of the variety. The payment shall be accompanied by a detailed statement of quantities sold by THE AGENT and its sub-licensee.
6. THE AGENT shall do its utmost to produce and maintain the certified seed and production at the highest levels of quality.
7. THE AGENT shall enable any representative of Terramax to visit the area of production and view and sample any of the stored seed production of the variety as they may wish with prior notice.
8. Upon Terramax's request, THE AGENT shall enable Terramax to review and inspect, by an accountant appointed by Terramax, all records of THE AGENT relating to this agreement.
9. Where plant varieties protection rights (PVR) are registered in the USA, pertaining to this variety, it shall be registered in the name of Terramax
10. All procedural requirements in order to maintain the registration of the variety, once registered, will be fulfilled by THE AGENT. Copies of all documents and correspondence relating thereto will be forwarded to Terramax.
11. The proprietary rights of the variety shall remain in the sole ownership of Terramax.
12. THE AGENT undertakes not to sell, transfer, or in any way dispose of genetic material of the variety, and shall take all reasonable measures to prevent such a transfer to third parties.
13. This agreement shall commence on the date of signature hereof, and shall extend for a seven (7) year period, subject to the terms and conditions of this agreement. Renewal for continued periods will be by mutual agreement.
14. Either party shall be entitled to terminate this agreement before the end of its term in the event that the other party:
    i. Is in default of its obligations hereunder, which has not been cured within thirty (30) days of written notice
    ii. Has become insolvent, or is in receivership, or is in the proceedings of bankruptcy.
    iii. There has been a transfer of controlling interest in THE AGENT's company.
15. Termination shall be by written notice to that effect.
16. Upon termination of this agreement, THE AGENT shall cease to market the variety as seed and dispose of remaining production in the commercial non-seed market.
17. Confidentiality: The parties and their employees, and or their affiliated companies, shall keep confidential all proprietary information and data pertaining to the variety and the sale thereof.
18. This agreement and any right or obligation thereunder, shall not be assigned to any other party by THE AGENT without the approval of Terramax.
19. This agreement shall be governed and construed in accordance of the legal system of the district of distribution.
20. In no event will either party be liable to the other party, or to any third party, for any indirect, special or consequential damages, which include without limitation, any loss of income or loss of profits.
21. If THE AGENT becomes aware or has any knowledge of unauthorized use of the variety THE AGENT shall promptly notify Terramax
22. THE AGENT and its affiliates and sub-licensees undertake not to attempt to modify, alter, or replicate the variety outside the terms of this agreement.
23. THE AGENT shall not market any of the variety as seed outside the USA.
24. THE AGENT represents and warrants to Terramax that it has the knowledge, capacity, experience, resources, and expertise required to carry out its obligations hereunder in respect of all Terramax's requirements for the receiving, handling, purchase, sale, and processing of the licenced variety in accordance with good, current, modern and state of the art standards, practice and technology. THE AGENT further represents that it is authorized pursuant to all Applicable Laws to perform its obligations under this agreement.

IN WITNESS THEREOF, THE PARTIES HAVE HEREUNTO SIGNED:

Legacy Hemp LLC                                    AND Terramax Holding Corporation

By _[signature]_                                    By _[signature]_

__Kenneth E. Anderson__                            __Hugh Campbell__
(Print Name)                                        (Print Name)

Date: __3-22-16__                                   Date: __3-22-2016__

Place: __Prescott WI USA__                          Place: __Qu'Appelle Saskatchewan__

# EXHIBIT D



**MILLER THOMSON**
AVOCATS | LAWYERS

MILLER THOMSON LLP
BANK OF MONTREAL BUILDING
2103 - 11TH AVENUE, SUITE 600
REGINA, SK S4P 3Z8
CANADA

T  306.347.8300
F  306.347.8350

MILLERTHOMSON.COM

February 11, 2020

**Via Email: lkonopacki@staffordlaw.com**

Stafford Rosenbaum LLP
222 West Washington Avenue, Suite 900
P.O. Box 1784
Madison, WI, USA 53701-1784

Attention:  Larry A. Konopacki

Jeff N. Grubb, Q.C.
Direct Line: 306.347.8393
Direct Fax: 306.347.8350
jgrubb@millerthomson.com

File No.: 0173524.0009

Dear Sir:

Re:   X59 (Hemp Nut) Germ Plasm Transfer, Royalty and Working Agreement dated April 22, 2016 between Legacy Hemp LLC ("Legacy") and Terramax Holdings Corp. (the "Agreement")

We are in receipt of your letter dated January 22, 2020.

Our client was surprised and disappointed to learn that Legacy was selling X59 hemp seed outside of the seven states identified in the Agreement. While Terramax has on a few occasions authorized Legacy to donate a few pounds of X59 hemp seed for research purposes to certain facilities outside of the seven specific states, at no time has Terramax authorized, or even known, that Legacy was selling seed in as many states outside of the seven and in the quantities identified in your letter. Terramax maintains that Legacy has breached the Agreement. In that regard, we note as follows:

1.  Clause 3 of the Agreement does not authorize the sale by Legacy of X59 hemp seed outside of the seven states. The second sentence in the clause simply forbids the sale of seed into any of the seven states that do not strictly require the use of certified hemp seed for planting or that allow a farmer to save hemp seed.

2.  Clause 23 of the Agreement does not authorize the sale by Legacy of X59 hemp seed outside of the seven states. It just states that no marketing of X59 hemp seed outside of the USA is allowed. That does not make selling in states other than the specified seven allowable.

3.  Terramax was not informed by any Legacy representatives that it was selling X59 hemp seed into Montana. Terramax learned of that directly from IND Hemp, not Legacy. Learning of that sale is what prompted Terramax to instruct us to send our letter of January 2, 2020 to Legacy. Terramax is adamant that at no time did Mr. Ken Anderson or anyone else on behalf of Legacy inform Terramax that Legacy was indeed selling X59 hemp seed outside of the seven specified states. In fact, Mr. Anderson met with Mr. Campbell during the summer of 2019 to request that Legacy be allowed to sell X59 hemp seed into states other than the specified seven. That request was denied. Terramax maintains that Legacy knew and understood that it had no authority to sell X59 hemp seed outside of the seven specified states.

4.  While it is stated in your letter that Legacy has no obligation to provide details to Terramax of its sales of X59 hemp seed, including the name and contact information for each customer, Terramax says that Legacy did in fact provide that full information in the first year or two of the term of the Agreement.

5.  Clause 19 of the Agreement does not entail that the law of the USA applies, as you suggest. The clause specifies that the Agreement be governed by the "legal system of the district of distribution". One of the features of the Agreement is the supply by Terramax of X59 hemp seed to Legacy. That is the "distribution" referenced in clause 19. The seed Terramax supplies Legacy is from its plant located at Qu'Appelle, Sk. and that location is the "district of distribution". It is Saskatchewan law that governs the Agreement. With respect, it makes no sense that an agreement between Terramax and Legacy be governed by the locations that Legacy in turn sells the seed. Those locations have no connection to Terramax that would make their law relevant to the governing of the Agreement.

6.  Terramax has recently come to understand that North Dakota, Kentucky, and Nebraska are states that do "not strictly require the use of only certified hemp seed for planting or allow farmer saved seed". Clause 3 of the Agreement specifically prohibits Legacy from selling seed into those states. Your letter confirms that in 2019 Legacy sold X59 hemp seed into two of those states. That constitutes a further breach of the Agreement by Legacy.

In light of the above, Terramax maintains that Legacy has breached the Agreement and Terramax is entitled to terminate the Agreement.

Terramax may be willing to consider continuing its business relationship with Legacy, but firstly the following concerns would have to be met to Terramax's satisfaction:

1.  Terramax will require a listing of the full details of all 2019 sales by Legacy (or any sub-licensee designated by Legacy) of X59 hemp seed, including the name and contact information for each customer, along with the declaration(s) obtained from each producer to not retain or sell any X59 hemp seed for growing purposes. This information is required for Terramax to be able to confirm that the quantity and states of Legacy's (or any sub-licensee designated by Legacy) X59 hemp seed sales in 2019 have been fully, correctly and accurately identified in the attachment to your letter to us of January 22, 2020.

2.  Obtaining an unequivocal and enforceable commitment that from and after January 1, 2020 neither Legacy nor any sub-licensee designated by Legacy has or will sell or distribute any X59 hemp seed (including common seed derived from X59 hemp seed) outside of states specified in the Agreement, excluding North Dakota, Kentucky, and Nebraska as they do not strictly require the use of only certified hemp seed for planting and they allow farmer saved seed, without firstly obtaining the express and written authorization of Terramax. Further, should any of the remaining four states (i.e. Illinois, Minnesota, Iowa, and Indiana) at any point not strictly require the use of only certified hemp seed for planting or allow farmer saved seed, then Legacy will immediately cease and refrain from selling or distributing any X59 hemp seed (including common seed derived from X59 hemp seed) into those states.



44661976.2

Page 3

Please let us know if Legacy is willing to explore a continuing business relationship with Terramax and is able to satisfy the above concerns.

Yours sincerely,

MILLER THOMSON LLP

Per:

Jeff N. Grubb, Q.C.
JNG/az

c.  Terramax Holdings Corp. Attn: Hugh Campbell (via email)



44661976.2