**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KNTUCKY**
**PADUCAH DIVISION**
**Case No. 5:20-cv-00090-TBR**

LEGACY HEMP LLC                                                                                              PLAINTIFF

v.

TERRAMAX HOLDINGS CORPORATION                                                              DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendant Terramax Holdings Corporation's ("Terramax") Motion to Dismiss. [DN 5]. Plaintiff Legacy Hemp LLC ("Legacy") has responded. [DN 15]. Terramax has replied. [DN 16]. As such, this matter is ripe for adjudication. For the reasons that follow, **IT IS HEREBY ORDERED** that Terramax's Motion to Dismiss [DN 5] is **GRANTED**.

**I.      Background**

Legacy is a Wisconsin limited liability company with its principal place of business in Prescott, Wisconsin. [DN 1 at 1]. Terramax is Saskatchewan corporation with its principal place of business in Saskatchewan, Canada. [*Id.*] Terramax engages in proprietary maintenance, production, and the sale of industrial hemp seed, including the X-59 Hemp Nut ("X-59"). Ken Anderson ("Anderson"), owner of Legacy, was doing business as Original Green Distribution, headquartered in Wisconsin, in 2014. During that time, Anderson was introduced to Terramax. [DN 5-3 at PageID 59]. Anderson was introduced to Terramax as "Ken Anderson from Original Green Distribution in Wisconsin". [*Id.* at PageID 63].

On March 22, 2016, Anderson, doing business as Legacy, and Hugh Campbell, doing business as Terramax, entered into a Germ Plasm Transfer, Royalty and Working Agreement ("Agreement"). [DN 1-1 at PageID 14]. The Agreement granted Legacy exclusive license to

1

maintain, multiply, and market X-59 in seven specified states, including Kentucky. [*Id.*] Legacy agreed to "maintain an aggressive programme to promote the sale of the variety in the specified States of the USA." [*Id.*] Legacy was required to "pay a royalty fee to Terramax on all quantities of seed sold of the variety." [*Id.*] The Agreement lists Legacy's address as "11609 Dawson Springs Rd. Crofton, KY, 42217". [*Id.*] In his declaration, Anderson stated, "The Distributor Agreement lists the Kentucky mailing address of one of Legacy's first X-59 hemp seed customers. The Kentucky mailing address was included because, at that time, Kentucky was the only state engaged in a hemp pilot program, and therefore the only state where growing X-59 hemp seed was legal." [DN 5-3 at PageID 60]. Hugh Campbell ("Campbell"), President of Terramax, has stated Terramax is not registered in Kentucky to do business and no Terramax employee has traveled to Kentucky in relation to business for Terramax. [DN 5-2 at PageID 56].

Legacy initially brought this action in a Wisconsin district court. However, that court dismissed for lack of personal jurisdiction over Terramax. Legacy subsequently brought this action here.

## II.   Legal Standard

Under Rule 12(b)(2), the burden is on the Plaintiffs to show that personal jurisdiction exists as to each defendant. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id*. When "[p]resented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Id.* (citing *Serras v. First Tennessee Bank Nat. Ass'n.*, 875 F.2d 1212, 1214 (6th

Cir. 1989)). When an evidentiary hearing has not been held, as in this case, a plaintiff's burden is "relatively slight" and "the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 548–49 (6th Cir. 2016) (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)). "[T]he pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh 'the controverting assertions of the party seeking dismissal.'" *Air Prods.*, 503 F.3d at 549 (quoting *Theunissen*, 935 F.2d at 1459).

"A federal court sitting in diversity may exercise personal jurisdiction over an out-of-state defendant only to the extent that a court of the forum state could do so." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 148 (6th Cir. 1997). Under Kentucky law, the Court first considers Kentucky's long-arm statute to determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories." *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011). If the statutory requirements are met, the Court must then apply the constitutional due process test "to determine if exercising personal jurisdiction over the non-resident defendant offends [its] federal due process rights." *Id.*

### III.   Discussion

#### A.  Judicial Estoppel

"Judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by that same party in an earlier proceeding." *Warda v. C.I.R.*, 15 F.3d 533, 538 (6th Cir.1994). This equitable doctrine safeguards the integrity of the courts by barring attempts at "cynical gamesmanship" by those who would "achiev[e] success on one position, then argu[e] the opposite to suit an exigency of the moment." *Eubanks v. CBSK Fin. Group, Inc.,* 385

3

F.3d 894, 897 (6th Cir. 2004) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir.1990)).

"In order to invoke judicial estoppel, a party must show that the opponent took a contrary position under oath in a prior proceeding *and that the prior position was accepted by the court*." *Teledyne*, 911 F.2d at 1218; *see also Browning v. Levy*, 283 F.3d 761, 775 (6th Cir.2002) (emphasis added). "[J]udicial estoppel does not bar a party from contradicting itself, but from contradicting a court's determination that was based on that party's position." *Teledyne*, 911 F.2d at 1218 n. 3. "Judicial estoppel is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." *Id.* at 1218.

Legacy argues Terramax argued in the Wisconsin case that Terramax believed Legacy was a Kentucky company and purposely availed itself to jurisdiction in this state. Terramax argues it never argued it was subject to jurisdiction in Kentucky. The focus of this Court is what position the Wisconsin Court accepted. The Wisconsin Court referred to Legacy as a Kentucky corporation twice in its Opinion. *Legacy Hemp LLC v. Terramax Holdings Corporation,* 2020 WL 2747743, *4 (W.D. Wis. May 27, 2020). However, the court held it did not have jurisdiction because "Legacy has not established that Terramax has sufficient minimum contacts with Wisconsin" and not because jurisdiction was appropriate in Kentucky. The Court agrees with Terramax that it only argued jurisdiction was not appropriate in Wisconsin and did not argue jurisdiction was proper in Kentucky. Terramax did repeatedly argue Legacy held itself out to be a Kentucky corporation. However, this does not equate to Terramax arguing jurisdiction in Kentucky is proper.  Therefore, Terramax is not estopped from arguing jurisdiction in Kentucky is not appropriate.

**B.  Kentucky's Long-Arm Statute**

For personal jurisdiction to be proper: (1) Kentucky's long-arm statute, § 454.210, must be satisfied; and (2) the exercise of jurisdiction must comport with due process. Therefore, this Court first turns to the question of whether this Court can exercise personal jurisdiction over Terramax under the Kentucky long-arm statute.

KRS 454.210(2)(a), Kentucky's long-arm statute, states, in relevant part:

(2)(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

> 1. Transacting any business in this Commonwealth;
> 2. Contracting to supply services or goods in this Commonwealth;

### 1. Transacting any business in this Commonwealth

To assert personal jurisdiction over Terramax under this provision of the Kentucky long-arm statute, Legacy must show: (1) Terramax's conduct falls under § 454.210(2)(a)(1) and (2) Legacy's claim "arises from" that statutory provision. *See Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 59 (Ky. 2011). "A claim 'arises from' certain conduct when there is a 'reasonable and direct nexus' between the conduct causing injury and the defendant's activities in the state." Churchill Downs, Inc. v. NLR Entm't, LLC, 2014 WL 2200674, at *5 (W.D. Ky. May 27, 2014) (quoting *Caesars*, 336 S.W.3d at 59).

Terramax argues it has not transacted any business in Kentucky because it has not "bought or sold any products in Kentucky." [DN 5-1 at 7]. Legacy argues Terramax transacted business in Kentucky because it "entered into an exclusive and long-term Distributor Agreement to provide X-59 hemp seed to a Kentucky company for sale in Kentucky."

"The Sixth Circuit has held that the 'use of the word "any" ... establishes that even the slightest transaction is sufficient to bring a corporation within [the forum's] long-arm jurisdiction.'" *Hall v. Rag-O-Rama*, 359 F. Supp. 3d 499, 506 (E.D. Ky. 2019) (emphasis in

original). However, the "transactions" described both in the Sixth Circuit case quoted in *Hall* and the accompanying district court cases cited by the court all involve the defendant reaching out to the plaintiff in their forum state by travelling to that state or calling, texting, or emailing the plaintiff in that state. *See Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014) (finding that the agent of the defendant travelling to the forum state to recruit the plaintiff satisfied the "slightest transaction" test); *Eat More Wings, LLC v. Home Mkt. Foods, Inc.*, 282 F. Supp. 3d 965, 970 (E.D. Ky. 2017) (finding that the defendant transacted business in Kentucky when he "sent emails to [plaintiff], knowing that he was in Kentucky, asking him to send samples and instructions for his products, which [plaintiff] fulfilled from Kentucky").

Here, Terramax did not reach out to Legacy in Kentucky. Campbell was initially introduced to Anderson through a mutual contact. [DN 5-3 at PageID 59]. At that time, Campbell was introduced to Anderson as representing a Wisconsin business. Once Anderson began communicating with Campbell on behalf of Legacy, it was again made clear that Legacy was not actually a Kentucky business. Legacy informed Terramax that the Kentucky mailing address belonged to one of Legacy's customers and was only included because Kentucky was the only state where growing X-59 was legal. The Agreement also was not executed in Kentucky. The Agreement was signed by Terramax in Canada and signed by Legacy in Wisconsin. These facts weigh in Terramax's favor.

However, Terramax did knowingly send its products to Kentucky. Terramax attempts to argue it did not ship products to Kentucky. Several invoices list the "SHIP TO" address as "Legacy Hemp LLC 11609 Dawson Springs Rd Crofton, KY 42217 USA". [DN 15-2 at PageID 204]. Terramax argues it did not ship products to Kentucky because the invoice goes on to state the products are shipped "Via Agrinomics IT Consulting". [*Id.*] Campbell states, "Legacy and/or

6

Agrinomics arranged for the product to be picked up at Terramax's place of business". [DN 16-1 at PageID 236]. Although the products were picked up from Terramax's place of business, Terramax knowingly sent its products to Kentucky on at least three occasions. [DN 15-2 at PageID 204, 211, 213]. This was not a one-time transaction. This Court finds that Terramax has transacted business in Kentucky by shipping product to this state.

### 2. Contracting to Supply Services or Goods in This Commonwealth

"There is little case law interpreting the meaning of 'contracting to supply services or goods' following *Caesars*. The Kentucky Supreme Court has held, however, that '[a] plain reading of [§ 454.210(2)(a)(2) ] produces the interpretation that the contract need not be made or executed in this Commonwealth, but, rather, only that the contract provide for the supplying of services or goods to be transported into, consumed or used in Kentucky.'" *Commonwealth of Kentucky v. Marathon Petroleum Co. LP*, 2018 WL 4620621, at *3 (W.D. Ky. Sept. 26, 2018) (quoting *Hinners v. Robey*, 336 S.W.3d 891, 896 (Ky. 2011)).

In *Hinners,* Robey was doing business as Robey's Pawn World, located in Sikeston, Missouri. 336 S.W.3d at 893. Hinners was a resident of Kenton County, Kentucky. *Id.* Robey placed a 2002 Cadillac Escalade on sale on eBay. *Id.* Hinners submitted the winning bid during the auction. *Id.* Hinners subsequently sued Robey for fraud and Robey moved to dismiss for lack of personal jurisdiction. *Id.* at 894. Hinners argued the Court had jurisdiction under KRS 454.210(2)(a)(2), among other provisions. The Court found Roby's action constituted contracting to supply services or goods in Kentucky. *Id.* at 896. The Court stated, "although the final deal was executed beyond Kentucky's border, it was anticipated by the parties from the outset that the vehicle would be transported to and used in Kentucky." *Id.* In *Beavers v. Riley Built, Inc.,* the Court stated, "[t]he question is not whether the product is 'required' to be operated in Kentucky, but

7

rather whether the parties intended the product 'to be transported into, consumed or used in Kentucky.'" 2017 WL 5633258 *3 (W.D. Ky. Nov. 22, 2017) (quoting *Hinners,* 336 S.W.3d at 896).

Here, the Agreement between Legacy and Terramax specifically "grants exclusive licence to [Legacy] within the specified States of the USA" including Kentucky. [DN 15-1 at PageID 135]. Terramax argues it did not contract to supply goods in Kentucky because Legacy is a "non-Kentucky based party". The Court agrees with Terramax that this case differs from the cited case due to the lack of Kentucky residents or corporations. However, this does not negate the fact that Terramax did contract to supply X-59 to Legacy and specifically chose to grant Legacy the right to sell and market X-59 in Kentucky.

### 3. "Arises From" Requirement

"Additionally, the long-arm statute requires that a plaintiff's claims "arise from" the jurisdictional predicate…The Kentucky Supreme Court has interpreted "arising from" to mean that 'the wrongful acts of the defendant alleged in the plaintiff's complaint must originate from the actions or activities that form the applicable statutory predicate for assertion of long-arm jurisdiction.'" *Marathon Petroleum Co. LP*, 2018 WL 4620621, at *3 (quoting *Caesars,* 336 S.W. 3d at 58–59.) "A claim 'arises from' certain conduct when there is a 'reasonable and direct nexus' between the conduct causing injury and the defendant's activities in the state." *Holbrook v. Mazda Motor Corp*., 2018 WL 1571905, at *2 (E.D. Ky. Mar. 30, 2018). Here, Legacy's claim must arise out of either Terramax transacting business in Kentucky or Terrmax contracting to supply goods in Kentucky.

Legacy asserts five separate claims in its Complaint. Those claims are: 1) claim for declaratory judgment that Terramax is in breach of the Agreement; 2) breach of the Agreement

through termination; 3) breach of the Agreement by granting IndHemp exclusive rights to sell X-59; 4) breach of the Agreement by refusing to provide X-59; and 5) breach of the covenant of good faith and fair dealing. [DN 1]. While Terramax did contract to allow Legacy to sell and market X-59 in Kentucky, this action is a contractual dispute that does not involve a Kentucky party. This action does not involve an issue with the seed Terramax provided Legacy to sell in Kentucky. The alleged breach of the Agreement arose from Terramax's decision to contract with IndHemp and Terramax's alleged refusal to provide X-59. Those actions did not occur in Kentucky or with a Kentucky party.

In *Kerry Steel, Inc. v. Paragon Industries, Inc.,* Kerry Steel was a Michigan business and Paragon was an Oklahoma business. 106 F.3d 147, 148 (6th Cir. 1997). Kerry Steel reached out to Paragon with an offer to sell steel coils. *Id.* Paragon accepted the offer by telephone. *Id.* Paragon then refused to pay the full purchase price because the steel coils allegedly did not conform to the agreed quality standard. *Id.* Kerry Steel brought suit in Michigan for the owed money. Paragon moved to dismiss the suit for lack of personal jurisdiction and the court granted the motion. *Id.* Kerry Steel appealed.

The Sixth Circuit affirmed the district court's holding for several reasons. Paragon had no employees in Michigan and no employee had ever traveled to Michigan to conduct business. *Id.* at 151. Kerry Steel also initiated contact with Paragon and Paragon responded from its home state. *Id.* The court also found that the action did not arise from Paragon's activities in Michigan. "At its most basic level, the claim arose out of Paragon's failure to pay the full purchase price, based on the purported nonconformity of the goods with the specifications of the contract. The refusal to pay occurred in Oklahoma." *Id.* at 152. Similarly, here, the breach occurred when Terramax allegedly contracted with a separate business and when they chose not to distribute the X-59 seeds

9

and terminate the contract. Those actions did not occur in this jurisdiction and do not arise from their actions in this jurisdiction. Therefore, this Court does not have jurisdiction over Terramax.

Legacy also argues this Court has jurisdiction over Terramax because X-59 seed was used in a trial at the University of Kentucky. However, this action did not arise out of participation in that trial. Therefore, that cannot serve as a basis for jurisdiction.

Due to the Court finding it does not have jurisdiction over Terramax under the Kentucky long-arm statute, the Court need not address the Constitutional Due Process factors.

### IV. Conclusion

For the above stated reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [DN 5] is **GRANTED**. A separate judgment will follow.

**IT IS SO ORDERED**.

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

January 19, 2021

cc: counsel