**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH**

| | |
|---|---|
| LEGACY HEMP LLC, ) <br> ) <br> *Plaintiff,* ) <br> ) <br> v. ) <br> ) <br> TERRAMAX HOLDINGS CORPORATION, ) <br> ) <br> *Defendant.* ) <br> ) | Case No. 5:20-cv-00090 (TBR) |

**MEMORANDUM OPINION AND ORDER**

This matter is back before the Court from the Sixth Circuit Court of Appeals, which reversed the Court's decision to grant Defendant Terramax Holdings Corporation's motion to dismiss. Terramax again moves to dismiss the complaint on jurisdictional grounds, this time arguing that Plaintiff Legacy Hemp LLC does not satisfy the requirements of federal due process. Legacy has submitted a Supplemental Memorandum Regarding Federal Due Process, Supp. Mem., Dkt. 25. Terramax has filed its own Memorandum of Law Regarding Federal Due Process, Mem. of Law, Dkt. 26. Legacy has replied, Reply, Dkt. 27. As such, this matter is ripe for adjudication.

For the reasons that follow, Defendant Terramax's Motion to Dismiss, Mot. to Dismiss, Dkt. 5, is **DENIED**.

**I.     FACTUAL BACKGROUND**

The facts of this case were set out in this Court's prior opinion, *see* Mem. Op. and Order, Dkt. 17, and in the Sixth Circuit's opinion, *see Legacy Hemp, LLC v. Terramax Holdings Corp.*, No. 21-5161, 2021 WL 4258822 (6th Cir. Sept. 20, 2021), so they will not be repeated in great detail here. Generally, Legacy alleges that Terramax committed a breach of contract. *See*

1

Complaint, Compl., Dkt. 1, ¶¶ 32–58.  According to Legacy, Terramax maintains that it was entitled to terminate the contract because Legacy had already breached the contract.  *See* Compl. ¶ 30; *see also* Letter, Ex. D, Dkt. 1-1, at 16–17.  Terramax challenges the Court's jurisdiction, on the basis of federal due process.  *See* Mot. to Dismiss; *see also* Mem. of Law.

## II.     LEGAL STANDARD

Under a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction prior to trial, the burden is on the plaintiff to show that personal jurisdiction exists as to each defendant.  *See Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  When "[p]resented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions."  *Id.* (citing *Serras v. First Tennessee Bank Nat. Ass'n.*, 875 F.2d 1212, 1214 (6th Cir. 1989)).

When an evidentiary hearing has not been held, as in this case, a plaintiff's burden is "relatively slight" and "the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal."  *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 548–49 (6th Cir. 2016) (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)).  "[T]he pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh 'the controverting assertions of the party seeking dismissal.' "  *Air Prods.*, 503 F.3d at 549 (quoting *Theunissen*, 935 F.2d at 1459).  However, the district court may consider a defendant's undisputed factual assertions.  *See CompuServe*, 89 F.3d at 1262; *Theunissen*, 935 F.2d at 1459*; NTCH-West Tenn, Inc., v. ZTE Corp.*, 761 Fed. Appx. 485, 488 (6th Cir. Jan. 16, 2019) (citing *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 153 (6th Cir. 1997)).  "Dismissal in this procedural posture is

proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a prima facie case for jurisdiction." *Id.*; *see also Kerry Steel, Inc.*, 106 F.3d at 149.

### III. DISCUSSION

Legacy must demonstrate that the exercise of personal jurisdiction over Terramax comports with federal due process. There are two kinds of personal jurisdiction within the federal due process inquiry: general jurisdiction and specific jurisdiction. *See Conn v. Zakharov*, 667 F.3d 705, 713 (6th Cir. 2012). General jurisdiction requires a showing that the defendant "has continuous and systematic contacts with the forum state" sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant. *Kerry Steel, Inc.*, 106 F.3d at 149. By contrast, specific jurisdiction only exposes the defendant to suit in the forum state for claims that " 'arise out of or relate to' a defendant's contacts with the forum." *Id.* (quoting *Helicopteros Nacionales de Colombia S.A., v. Hall*, 466 U.S. 408, 414–415 & nn. 8–10 (1984)).

Terramax asserts that Legacy limits its arguments to the issue of specific jurisdiction because Terramax is not subject to general jurisdiction in Kentucky. *See* Mem. of Law at 6. Indeed, Legacy only argues that the Court has specific jurisdiction over Terramax. *See* Supp. Mem. 5–15; *see also* Reply at 5–11. The Court therefore assumes that general jurisdiction does not exist and focuses its analysis on whether Legacy has made a prima facie showing of specific jurisdiction over Terramax.

Here, "the crucial federal constitutional inquiry is whether, given the facts of the case, the nonresident defendant has sufficient contacts with the forum state that the district court's exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v.*

3

*Meyer*, 311 U.S. 457, 463 (1940)). The Sixth Circuit has established the following three-part test to determine if sufficient contacts have been established: (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state;" (2) "the cause of action must arise from the defendant's activities there;" and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable." *Calphalon v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (quoting *Southern Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968)). "[E]ach criterion represents an independent requirement, and failure to meet any one of the three [criteria] means that personal jurisdiction may not be invoked." *Carter v. Paschall Truck Lines, Inc.*, 388 F. Supp. 3d 883, 891 (W.D. Ky. 2019) (quoting *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1303 (6th Cir. 1989)); *see also City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 665 (6th Cir. 2005) ("We must affirm the district court's holding if we conclude that any one of the three prongs are not satisfied.").

    A. ***Purposeful Availment***

Whether a defendant has purposefully availed itself of the privilege of acting in the forum state is "the *sine quo non* for *in personam* jurisdiction." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (quoting *Mohasco Indus.*, 401 F.2d at 381–82). Purposeful availment asks "whether [the defendant] acted or caused a consequence in [the forum state] such that he invoked the benefits and protections of [the forum state's] law." *MAG IAS Holdings v. Schmückle*, 854 F.3d 894, 900 (6th Cir. 2017). This requirement "ensures that [the defendant] could have 'reasonably anticipated being haled into court there,' " and ensures defendants are not brought into a court "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.*

4

(quoting *LAK, Inc.*, 885 F.2d at 1300); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). "[P]urposeful availment exists if the defendant created a 'substantial connection' with the forum state by engaging in 'significant activities within the State,' or by creating 'continuing obligations' to residents in that state." *Id.* (quoting *Burger King*, 471 U.S. at 475–76).

In March of 2016, Terramax entered into an agreement with Legacy. *See* Compl. ¶¶ 8–11; *see also* Agreement, Dkt. 1-1. Legacy claims that, at that time, it was organized and registered as a Kentucky corporation. *See* Compl. ¶ 9; *see also* Agreement; Supp. Mem. at 1. And according to the Complaint, Terramax was aware that Legacy called the Bluegrass State home. *See* Compl. ¶ 9; *see also* Agreement; Supp. Mem. at 1, 3–4. Terramax disputes these allegations. Terramax contends that Legacy was actually a Wisconsin corporation "pretend[ing] to be [a] Kentucky-based [corporation] because its business was illegal in [Wisconsin]." Mem. of Law at 11 (emphasis omitted). To support its argument, Terramax cites a declaration from the Wisconsin litigation where Legacy allegedly admitted that it was a Wisconsin corporation in March of 2016. *See* Mem. of Law; *see also* Jacquart Decl., Ex. A, ¶ 6. However, at this stage of the proceedings, the Court must view the pleadings and affidavits "in a light most favorable to the plaintiff" and should not weigh the defendant's "controverting assertions." *Air Prods.*, 503 F.3d at 549 (quoting *Theunissen*, 935 F.2d at 1459). Therefore, the Court concludes, for the purposes of ruling on this motion to dismiss, that in March of 2016 Legacy was indeed a Kentucky corporation.

The fact that Terramax entered into a contract with Legacy, a Kentucky corporation, tends to show purposeful availment, but that "alone does not automatically establish sufficient minimum contacts." *Id.* at 551 (citing *Burger King*, 471 U.S. at 478–79) (emphasis omitted). The presence of "certain factors in addition to the contract" must be found for there to be

purposeful availment.[1]  *Ibid.*  The Sixth Circuit has found a number of different factors to be relevant to this analysis, and the Court considers each of those factors below.[2]

Up first are the parties' "prior negotiations and contemplated future consequences." *Id.* at 551 (quoting *Burger King*, 471 U.S. at 479).  This factor focuses on the extent of the parties' communications and the nature of their relationship.

The parties' communications indicate, albeit slightly, that Terramax purposefully availed itself to Kentucky.  Although the Complaint does not allege that Terramax communicated with Legacy in Kentucky through hundreds or thousands of calls, emails, and mailpieces, "[a] numerical count of the calls and letters has no talismanic significance." *Air Prods.*, 503 F.3d at 551 (quoting *LAK, Inc.*, 885 F.2d at 1301); *see also Schmückle*, 854 F.3d at 901 ("[T]he issue is not the quantity, but the quality of a defendant's contacts with the forum state.").  Rather, what matters is "[t]he quality of the contacts as demonstrating purposeful availment." *Air Prods.*, 503 F.3d at 551 (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985)).  The Sixth Circuit has stated that "contacts lack quality when they are initiated by the plaintiff rather than the defendant, in part because '[t]he unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum.' " *Ibid.*

---

[1] Terramax contends that the "the due process requirements for tort claims" are "generally . . . less burdensome" than the requirements for "breach of contract claims." Mem. of Law at 18 n.9.  That's right in some ways and wrong in others.  "The existence of intentional tortious conduct . . . *enhances* a party's other contacts with the forum state." *Air Prods.*, 503 F.3d at 553 (emphasis added) (quotations and citation omitted).  Just because a tort claim might enhance a party's contacts with a forum state does not mean that cases dealing with tort claims are inapplicable to cases dealing with contract claims.  These tort cases still analyze the same factors that are relevant to the purposeful availment analysis in this case.  *See, e.g.*, *id.* at 551 (quoting *Burger King*, 471 U.S. at 479).

[2] The Sixth Circuit requires courts to consider "certain factors" in the purposeful availment analysis, but oftentimes these "factors" end up running together. *Air Prods.*, 503 F.3d at 549 (citing *Burger King*, 471 U.S. at 478–79); *see, e.g.*, *Schmückle*, 854 F.3d at 901–03.  This makes it difficult for the Court to identify what exactly these "certain factors" are.  The Court believes that it has correctly picked out the four factors relevant to this analysis. *See Air Prods.*, 503 F.3d at 549; *see also Power Invs., LLC v. SL EC, LLC*, 927 F.3d 914, 919 (6th Cir. 2019).  However, if the Court intermingled any of the factors, it would not affect today's result.  The Court would still be considering all of the necessary information because several factors in this opinion contain elements that could stand as their own factor.  And anyways, courts typically incorporate these factors into one analysis.

Here, Legacy alleges that "[o]n at least one occasion, Terramax request[ed] that while [Ken Anderson] was in Kentucky [he] photograph the growth of Mr. Clark's X-59 hemp seed." Anderson Decl., Dkt. 15-2, ¶ 10. And, according to Legacy, "[Anderson] texted the photographs to Terramax from Kentucky." *Id.* Legacy further asserts that Terramax "communicated directly with Mr. Clark in Kentucky by phone on a frequent basis to monitor the business relationship." *Id.* ¶ 9. Legacy also maintains that Terramax's lawyer directed a letter to Legacy at the Kentucky address listed in the agreement. *See* Attorney Letter, Ex. B., Dkt. 1-1, at 4. These contacts demonstrate purposeful availment. There is no doubt, according to Legacy's pleadings and affidavits, that Terramax initiated conversations with Legacy in Kentucky. Anderson Decl. ¶ 10; *see also* Attorney Letter. And because Terramax's "frequent" communications with Clark were made for the purposes of "monitor[ing] the business relationship," it appears that these conversations were not simply the result of unilateral activity on the part of Legacy. Anderson Decl. ¶ 9.

Terramax responds by claiming that Legacy admitted in the Wisconsin litigation that "all the negotiations, communications, and dealings between the parties occurred between Legacy in Wisconsin and Terramax in Saskatchewan." Mem. of Law at 8 (citing Jacquart Decl., Ex. A, Dkt. 5-3, ¶¶ 1–6). But Terramax exaggerates what was said in the Wisconsin litigation. In that declaration, Anderson stated that he "engaged in continuous discussions" with Terramax that "occurred by phone and email to and from [Anderson] in Prescott, Wisconsin." Jacquart Decl., Ex. A, ¶ 4. That language does not foreclose the possibility that some of those communications might have occurred while Anderson was in Kentucky. So too with Clark, the Kentucky producer. Moreover, the Court is mindful of the fact that at this stage of the proceedings it

7


should not weigh the defendant's "controverting assertions," and it refuses to do so. *Air Prods.*, 503 F.3d at 549 (quoting *Theunissen*, 935 F.2d at 1459).

True, the numerosity of the alleged communications somewhat diminishes the strength of Terramax's contacts with Kentucky. *See* Compl.; *see also Power Invs., LLC v. SL EC, LLC*, 927 F.3d 914, 919 (6th Cir. 2019) (considering the fact that the defendant made "hundreds, if not thousands" of communications to Kentucky, not just a "handful of phone calls"). But again, Legacy still asserts that Terramax "frequent[ly]" communicated with its Kentucky producer. *See* Anderson Decl. ¶ 9. And, more importantly, Legacy claims that Terramax initiated conversations in Kentucky that were related to its Kentucky contacts. *See* Anderson Decl. ¶¶ 9–10; *see also Bulso v. O'Shea*, 730 F. App'x 347, 351 (6th Cir. 2018) (stating that communications are more likely to confer jurisdiction if they are related to the defendant's contacts in the forum state). That is enough for the Court to conclude that the quality of the parties' communications slightly favors a finding of purposeful availment.

The nature of the parties' relationship provides further evidence that Terramax's contacts are the result of deliberate conduct that amounts to purposeful availment. An "ongoing" and "continuing" relationship suggests that a defendant purposefully availed itself to a forum; a relationship based merely on an "isolated transaction" does not. *Kerry Steel, Inc.*, 106 F.3d at 151; *Air Prods.*, 503 F.3d at 551. In this case, the parties entered into a seven-year agreement where Terramax agreed to provide Legacy with X-59 hemp seed for distribution in the United States. *See* Compl. ¶ 8; *see also* Agreement ¶¶ 1, 13. This agreement also obligated Legacy to pay Terramax a royalty on all X-59 hemp seed that it sold. *See* Compl. ¶ 8; *see also* Agreement ¶ 5. Both the length of the commitment and the way that the agreement intertwined the parties' business interests demonstrate that an "ongoing" and "continuing" relationship existed. *See*

*Kerry Steel, Inc.*, 106 F.3d at 151; *see also Air Prods.*, 503 F.3d at 551 (finding that a nine-year relationship was "continuing"); *Schmückle*, 854 F.3d at 901–02 (finding that a "close working relationship" lasting for eight months suggests purposeful availment); *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 628 (6th Cir. 1998) (stating that the defendant had purposefully availed itself to the forum state, in part, because "both parties envisioned a relationship . . . that would span several years"). Such a commitment is hardly an "isolated transaction." *See Kerry Steel, Inc.*, 106 F.3d at 151 (stating that a one-time purchase of steel coils was "nothing more than an isolated transaction"). Further underpinning this conclusion is the fact that the parties contemplated that they might renew the agreement in the future. *See* Agreement ¶ 13 ("Renewal for continued periods will be by mutual agreement.").

In sum, the parties' communications slightly tip the scales in favor of purposeful availment, and the nature of their relationship tips the scales even further in that direction. As a result, the first factor—the parties' "prior negotiations and contemplated future consequences"— weighs in favor Legacy.

The next factor to consider is the "terms of the contract." *Air Prods.*, 503 F.3d at 549 (quoting *Burger King*, 471 U.S. at 479). The agreement provided Legacy the exclusive right to sell X-59 hemp seed in seven states, one of which was Kentucky. *See* Agreement ¶ 1. The agreement further stated that Legacy "shall use its best efforts to maintain an aggressive programme to promote the sale of" X-59 hemp seed in those seven states, e.g., Kentucky. *See id.* ¶ 3. What's more, the agreement specified that Terramax would receive royalty payments for any X-59 hemp seed that was sold in Kentucky. *See id.* ¶ 5. And on top of all of that, the agreement identifies Legacy as having a Crofton, Kentucky, address. *See id.*

Rather than focusing on what the agreement says, Terramax emphasizes what it does not say. Terramax claims that "the Agreement [did] not obligate Terramax to engage in any activity in Kentucky." Mem. of Law at 9; *see also* Agreement. While that may be true, this ignores all of the ways that Kentucky was a part of the agreement. *See* Agreement ¶¶ 1, 3, 5. And, most importantly, Terramax's argument ignores the fact that the agreement specified that Terramax would financially profit off of Legacy's X-59 hemp seed sales in Kentucky. *See id.* ¶ 5.

At this stage of the proceedings, the terms of the agreement support Legacy's "relatively slight" burden. *See Brewington*, 836 F.3d at 549. This factor—the "terms of the contract"—weighs in favor of Legacy.

The Court now turns to the "parties' actual course of dealing." *Air Prods.*, 503 F.3d at 549 (quoting *Burger King*, 471 U.S. at 479). On balance, this factor strongly favors a finding of purposeful availment.

Let's take Legacy's side of the ledger first. Most importantly, Legacy alleges that, at the time the parties entered into the agreement, Kentucky was the only state where growing X-59 hemp seed was legal. *See* Supp. Mem. at 10; *see also* Anderson Decl. ¶ 3. If true, Terramax would not have been able to produce and then sell X-59 hemp seed in the United States. *See* Supp. Mem. at 10; *see also* Anderson Decl. ¶ 3. Such allegations are strong evidence that Terramax purposefully targeted Kentucky to invoke "the benefits and protections of [its] laws." *Burger King*, 471 U.S. at 482; *cf. Aristech Chem. Int'l Ltd.*, 138 F.3d at 628 (finding that an order of a "specially-manufactured product" is more likely to satisfy the purposeful availment criterion). Legacy further alleges that Terramax sold X-59 hemp seed to Legacy and on multiple occasions shipped that seed to Legacy's Kentucky address.[3] *See Tharo Sys., Inc. v. Cab*

---

[3] An email in the record from Doris Hamilton, Industrial Hemp Program Manager for the Kentucky Department of Agriculture, states that these packages should have been delivered directly to the Kentucky Department of

*Produkttechnik GMBH & Co. KG*, 196 F. App'x 366, 370 (6th Cir. 2006) (finding the fact that defendant shipped product to the forum state suggests purposeful availment); *see also* Supp. Mem. at 10; Anderson Decl. ¶ 5; Invoices, Ex. A, Dkt. 15-2, at 5. And according to Legacy, Terramax participated in a seed varietal trial at the University of Kentucky in 2016, 2017, and 2018. *See* Supp. Mem. at 10; *see also* Anderson Decl. ¶ 11; Trial Emails, Ex. F., Dkt. 15-2, 16–19. Thrumming beneath all of this is the fact that Legacy and Terramax seem to have had a "close working relationship" during this time period. *Schmückle*, 854 F.3d at 901. For example, emails indicate that Terramax might have viewed Legacy as its "U[nited] S[tates] agent." *See* Supp. Mem.; *see also* Trial Emails at 16.

In comparison, there's not as much on Terramax's side of the ledger. Terramax argues that it never shipped any product to Kentucky and that it never participated in any University of Kentucky seed trials. *See* Mem. of Law at 10–11; *see also* Second Campbell Decl., Dkt. 16-2, ¶¶ 4, 9, 11. But because the district court should not weigh the "controverting assertions" of the party seeking dismissal, these arguments do not help Terramax's case. *Air Prods.*, 503 F.3d at 549 (quoting *Theunissen*, 935 F.2d at 1459). Terramax argues in the alternative that neither "the three small shipments" nor the "small sample of seed [used] for [the] study" create a substantial enough connection to support personal jurisdiction. *See* Mem. of Law at 10–11. The problem with this argument—aside from how it downplays Terramax's connection to Kentucky—is that these activities are not considered by themselves. The Court must look at the "parties' actual course of dealing," which includes all of their conduct. *See Air Prods.*, 503 F.3d at 549 (quoting

---

Agriculture in Frankfort, Kentucky. *See* Hamilton Email, Ex. C, Dkt. 15-2, at 10. Even if this is the case, the product would still have been sent to Kentucky. *See id.* And in fact, the possibility that the Kentucky Department of Agriculture was first receiving the goods (or should have been receiving the goods) provides even more evidence that Terramax should have foreseen that these shipments would subject it to the jurisdiction of Kentucky courts. *See Schmückle*, 854 F.3d at 902.

11

*Burger King*, 471 U.S. at 479). Here, Terramax's alleged contacts include sending the shipments *and* participating in the trial *and* targeting Kentucky because of its laws.[4] *See* Supp. Mem. These actions, taken together, tend to show that Terramax deliberately acted in Kentucky and knew that those actions would have consequences there. And while it is true that Legacy does not allege that Terramax performed tasks in Kentucky at Legacy's direction, that is not enough to show that Terramax's contacts are "random," "fortuitous," or "attenuated." *Schmückle*, 854 F.3d at 900 (quoting *LAK, Inc.*, 885 F.2d at 1300); *see also Tharo Sys., Inc.*, 196 F. App'x at 370 (considering whether the defendant performed tasks in the forum state at the plaintiff's direction).

The third factor therefore favors Legacy.

Finally, the Court looks at whether the defendant actually "entered [the forum state]." *Power Invs., LLC*, 927 F.3d at 919; *see also Schmückle*, 854 F.3d at 901–02. Although not necessary to establish sufficient minimum contacts, evidence that a defendant physically entered the forum state indicates that personal jurisdiction exists. *See Power Invs., LLC*, 927 F.3d at 919; *see also Schmückle*, 854 F.3d at 901–02. Legacy asserts in its reply that "Terramax traveled to Kentucky to view the farm." Reply at 6. However, Legacy makes no mention of such a trip in any affidavits or elsewhere in its pleadings.[5] *See* Compl.; Supp. Mem. For its part, Terramax denies making such trip. Terramax maintains that "[n]either its President, Mr. Campbell, nor its

---

[4] With regard to this factor, Terramax ignores Legacy's assertion that the parties specifically targeted Kentucky because of its hemp laws. *See* Mem. of Law. However, Terramax does address this argument elsewhere in its pleadings. For example, Terramax argues that Legacy is not a Kentucky corporation because it was only "pretend[ing] to be Kentucky-based." Mem. of Law at 11 (emphasis omitted). According to Terramax, Legacy had to engage in this ruse "because its business was illegal in its actual location, Wisconsin." *Id.* This language might indicate that Terramax concedes that the parties specifically targeted the Kentucky forum because of its laws.
[5] The only evidence the Court was able to find that such a trip might have occurred comes from the early stages of the negotiations. In a draft of the agreement, Legacy wrote: "[We] invite [Terramax] to see our KY operations where we can go into detail exactly how we will execute what is laid out in the [Memorandum of Understanding]." Memorandum of Understanding, Dkt. 15-1, at 22–23. But of course, the fact that Legacy invited Terramax to Kentucky does not necessarily mean that Terramax accepted the invitation.

employees have ever travelled to Kentucky for any Terramax business purpose." Mem. of Law at 3 (citing First Campbell Decl., Dkt. 5-2, ¶ 10). Although Legacy's one-off allegation leaves much to be desired, the fact remains that the parties appear to dispute whether Terramax traveled to Kentucky as part of its business relationship with Legacy. And because no evidentiary hearing has been held, the court may not consider Terramax's disputed factual assertion. *See CompuServe*, 89 F.3d at 1262; *see also Theunissen*, 935 F.2d at 1459. Consequently, the Court finds that this factor—whether the defendant actually "entered [the forum state]"—favors Legacy.[6]

All in all, it seems that Terramax checks just about every box of the purposeful availment analysis. Terramax entered into a contract with Legacy, which was, allegedly, a Kentucky corporation at that time. And each of the relevant factors—the parties' prior negotiations and contemplated consequences; the terms of the contract; the parties' actual course of dealing; and whether the defendant entered the forum state—weigh in favor of purposeful availment.

The Court therefore finds that Terramax purposefully availed itself of the privilege of doing business in Kentucky.

## B. *Arising From*

In the Sixth Circuit, the "arising from" criterion "requires that [a defendant's] contacts be 'related to the operative facts of the controversy.'" *MAG IAS Holdings*, 854 F.3d at 903. Federal due process requires "an affiliation between the forum and underlying controversy, principally, [an] activity or occurrence that takes place in the forum State." *Bristol-Myers*

---

[6] Although the Court concludes that the parties dispute whether Terramax visited Kentucky and that this factor therefore favors Legacy, such a determination is not necessary to find purposeful availment. *See Power Invs., LLC*, 927 F.3d at 919; *see also Schmückle*, 854 F.3d at 901–02. The fact that the first three factors already weigh in favor of Legacy is enough to satisfy the plaintiff's "relatively slight" burden at this stage of the proceedings. *See Brewington*, 836 F.3d at 549. The fact that there might be a dispute as to this issue only further demonstrates that Terramax purposefully availed itself here.

13

*Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  It is for this reason that specific jurisdiction is confined to adjudication of "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Ibid.*  Put differently, the specific jurisdiction inquiry focuses on "the relationship among the defendant, the forum, and the litigation," *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014), because the plaintiff's claims must "arise out of or relate to the defendant's contacts" in the state, *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017 (2021) (quoting *Bristol-Myers*, 137 S. Ct. at 1025).

      The Sixth Circuit applies a "lenient" standard when evaluating the "arising from" criterion.  *See Lyngaas v. Ag*, 992 F.3d 412, 423 (6th Cir. 2021) (quoting *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)).  This lenient standard is met "when 'the operative facts are at least marginally related to the alleged contacts' between the defendant and the forum." *Ibid.*

      The Court has already determined that the parties' "continuing contractual obligation" is at the heart of why Terramax purposefully availed itself of the privilege of doing business in Kentucky.  *See Tharo Sys., Inc.*, 196 F. App'x at 371.  "And because the cause of action is for breach of that obligation, . . . it naturally arises from the defendant's activities in [Kentucky]." *Id.* (alterations and quotations omitted) (quoting *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998)); *see also Erie Acquisition Holdings, Inc. v. Gritzuk*, No. 16-CV-2274-SHL-TMP, 2016 WL 10612753, at *5 (W.D. Tenn. Aug. 23, 2016) ("When an action is for the breach of contract, 'it necessarily follows that the cause of action arises directly out of the contract entered into by the plaintiff and the non-resident defendant.' ") (quoting *Auto Channel, Inc. v. Speedvision Network*, LLC, 995 F. Supp. 761, 766 (W.D. Ky. 1997)).  Just as Kentucky soil is where Terramax's X-59 hemp seed grew, Terramax's "entering of a contractual relationship with [a

14

Kentucky] corporation" is "necessarily the very soil from which the action for breach grew." *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 229 (6th Cir. 1972).

Terramax, relying on *Kerry Steel, Inc.*, 106 F.3d at 151, and *Calphalon*, 228 F.3d at 724, argues that the "arising from" criterion is not satisfied. Terramax contends that the alleged breach of the agreement occurred in Canada and the alleged harm to Legacy occurred in Wisconsin. *See* Mem. of Law at 16–17. Thus, Terramax concludes that its contacts are not related to the operative facts of the controversy. *See MAG IAS Holdings*, 854 F.3d at 903. However, the problem with Terramax's reliance on *Kerry Steel, Inc.* is that there the plaintiff "alleged no facts connecting either the subject matter of the contract or its performance to the [forum state]." 106 F.3d at 151. By contrast, Legacy has done just that, *see supra* Part III.A.

Terramax's citation to *Calphalon* does not fare much better. It appears to the Court that Terramax uses *Calphalon* to argue that "the actual breach does not arise from the very soil from which the action for breach grew." 228 F.3d at 724 (quoting *In–Flight*, 466 F.2d at 228). The Court disagrees. In *Calphalon* the Sixth Circuit found no purposeful availment because the defendant's performance of the agreement was "not focused on exploiting any market for cookware in the [forum state]." *Id.* at 723. Here, however, the agreement was focused on "aggressively" exploiting the hemp seed market in Kentucky, something that Terramax would financially profit from. Agreement ¶¶ 3, 5. The operative facts here are at least "marginally related" to the alleged contacts between the defendant and the forum. *Lyngaas*, 992 F.3d at 423. Terramax's claim that the breach and harm might have occurred elsewhere are not enough to overcome Legacy's lenient burden here. *See Air Prods.*, 503 F.3d at 553 (finding the "arising from" criterion satisfied even though the transfer of assets occurred wholly outside of the forum state and the transfer did not involve entities in that state).

But even if Terramax was correct that its alleged breach does not arise from the very soil from which the action grew, the exercise of jurisdiction may still be deemed reasonable if "the consequences of the act or breach caused by the defendant have a substantial enough connection with the forum state." *Calphalon*, 228 F.3d at 724. For the same reasons described above, the Court believes that Legacy would also satisfy this standard.

Mindful of the fact that the "arising from" criterion is a "lenient standard," and that the operative facts need only be "marginally related" to the alleged contacts, and that Legacy need only make a prima facie showing of jurisdiction at this stage of the proceedings, the Court concludes that this criterion is satisfied. *See Lyngaas*, 992 F.3d at 423.

### C. *Reasonableness*

Finally, the court must ask whether jurisdiction is reasonable; that way exercising personal jurisdiction will be consistent with notions of "fair play and substantial justice." *Burger King*, 471 U.S. at 476–77. According to the Sixth Circuit, whether it would be reasonable for a court to exercise jurisdiction over a defendant turns on three factors: (1) "the burden on the defendant;" (2) "the interests of the forum State;" and (3) "the plaintiff's interest in obtaining relief."[7] *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 508 (6th Cir. 2014)

---

[7] Different panels of the Sixth Circuit have interpreted *Asahi Metal Indus. Co.* as setting out a different number of factors for the reasonableness inquiry. *See Beydoun*, 768 F.3d at 508 (three-factor test); *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005) (four-factor test); *Theunissen*, 935 F.2d at 1458 (five-factor test). This discrepancy might come from the text of *Asahi Metal Indus. Co.* There, the Supreme Court first stated that, when determining the reasonableness of the exercise of jurisdiction, "[a] court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co.*, 480 U.S. at 113. Those are the three factors that are contained in every Sixth Circuit test. However, the Supreme Court went on to write in the next sentence that a court "must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.' " *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). Those last two considerations sometimes stand as their own factors. *See Beydoun*, 768 F.3d at 508. The Court follows recent Sixth Circuit precedent, which focuses its inquiry on the first three factors. *See id.* That said, *Asahi Metal Indus. Co.* still requires a court to weigh the last two considerations in its determination, so the Court will do so. Ultimately, the Court believes that it matters little whether this is a five-factor test, or whether the last two considerations simply inform the first three factors. These topics overlap, and they also reinforce each other.

(quoting *Asahi Metal Indus. Co. v. Super. Court of Cal.*, 480 U.S. 102, 113 (1987)). The Supreme Court has further stated, and the Sixth Circuit has acknowledged, that a court must also weigh in its determination two other considerations: "the interstate judicial system's interest in obtaining the most efficient resolution of controversies" and "the shared interest of the several States in furthering fundamental and substantive social policies." *Asahi Metal Indus. Co.*, 480 U.S. at 113; *see also Theunissen*, 935 F.2d at 1458 (quoting *Asahi Metal Indus. Co.*, 480 U.S. at 113). And when, as in this case, the first two criteria are met, "an inference of reasonableness arises" and "only the unusual case will not meet this third criteria." *Air Prods.*, 503 F.3d at 554 (quoting *Theunissen*, 935 F.2d at 1461).

The first factor—"the burden on the defendant"—somewhat favors Legacy. Yes, Terramax is a foreign corporation, and defending this lawsuit in Kentucky will be a burden. But according to Legacy, Terramax has visited Kentucky. *See xLM Sols., LLC v. Mecanica Sols., Inc.*, No. 18-CV-10443, 2018 WL 2973375, at *6 (E.D. Mich. June 13, 2018) (finding less of a burden exists when the plaintiff alleged that the defendant had visited the forum state); *see also Contech Bridge Sols., Inc. v. Keaffaber*, No. 1:11-CV-216, 2011 WL 5037210, at *10 (S.D. Ohio Oct. 24, 2011) (stating that there is less of a burden when the defendant regularly traveled to the forum state). And more importantly, the Sixth Circuit has held that "a Canadian defendant" bears a "substantially lighter burden" than "most other foreign defendants," since "only a short plane flight separates Ontario from Kentucky." *Aristech Chem. Int'l Ltd.*, 138 F.3d at 628; *see also Terry Barr Sales, L.L.C. v. Amtek Metal Indus.*, Inc., No. 08-10749, 2008 WL 4449633, at *9 (E.D. Mich. Oct. 2, 2008) (citing approvingly to *Aristech Chem. Int'l Ltd.*). These observations apply here with equal force, because Saskatchewan and Ontario are about the same distance from Kentucky. It is not as though Terramax has to "travel from the other side of the

17

world, or even across the Atlantic." *Aristech Chem. Int'l Ltd.*, 138 F.3d at 628 (internal citations omitted).

Terramax claims that litigating this case in Kentucky would present a significant burden because it is "a small company with only two employees, both of whom work . . . north of Qu'Appelle, Saskatchewan, Canada." Mem. of Law at 3 (citing First Campbell Decl. ¶ 11); *see also id.* at 21–22. There's some truth to that. *Cf. Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 797 (6th Cir. 1996) (finding that fairness concerns are not present when a defendant can easily travel to the defendant's home jurisdiction to seek redress). But Terramax has not alleged that mounting such a defense would be debilitating, unduly expensive, or cause a crisis to its business. *See id.*; *see also Verulux, LTC. v. Johnston*, No. 3:09 CV 823, 2010 WL 1795888, at *7 (N.D. Ohio May 5, 2010) (finding more of a burden on Canadian defendants when a defendant stated in an affidavit that "[d]efending this lawsuit in Ohio would be financially *debilitating* to me and the Companies") (emphasis added); *see also SSM Indus. v. Fairchild Apparel Grp., Inc.*, No. 1:03-CV-223, 2004 WL 1109547, at *10 (E.D. Tenn. Jan. 16, 2004) ("Defendants have not submitted any facts or proof to demonstrate that requiring [them] to litigate this garden variety breach of contract action in [the forum state] would be *unduly expensive* or *cause a crisis* in the operation of [their] business.") (emphasis added). And the ordinary burdens of litigation do not implicate fairness concerns. *See SSM Indus.*, 2004 WL 1109547, at *11 ("It will usually be fair to subject a nonresident defendant to the burdens and inconvenience of litigating in the other forum for disputes relating to such business or economic activity.").

Next up is the second factor, "the interests of the forum State." Kentucky undoubtedly has an interest in protecting Kentucky corporations against breach of contract. *See Schmückle*,

18

854 F.3d at 904; *see also SSM Indus.*, 2004 WL 1109547, at *11 ("When a contract is made with a Tennessee resident, the State of Tennessee has a strong interest in providing a judicial forum to resolve a suit based on a breach of the contract."). And even though Terramax admits that it is no longer a Kentucky corporation, *see* Supp. Mem. at 1, Kentucky still maintains at least some of this interest in the litigation. According to Legacy's allegations, which the Court must take as true, Terramax shipped X-59 hemp seed to Kentucky for a Kentucky corporation to grow and distribute there. *See id.*; *see also* Mem. of Law at 22. That's enough for the second factor to favor Legacy, at least at this stage of the proceeding. It matters not that Terramax contends "rural Saskatchewan" could "just as easily be said" to have an interest in "developing" its hemp industry. Mem. of Law at 22. For that allegation does not diminish Kentucky's interests in protecting its corporations or developing its own hemp industry. *See Schmückle*, 854 F.3d at 904; *see also SSM Indus.*, 2004 WL 1109547, at *11 ("Defendants have not demonstrated that the State of California would be a *more efficient* forum, or that California has a *greater interest* in this case than Tennessee.") (emphasis added).

With regard to the third factor, "the plaintiff's interest in obtaining relief," the balance again favors Legacy. Legacy asserts that Terramax breached the agreement, causing serious damage to Legacy's business. *See* Compl. Terramax does not explicitly dispute this point. *See* Mem. of Law.

The two remaining considerations—"the interstate judicial system's interest in obtaining the most efficient resolution of controversies" and "the shared interest of the several States in furthering fundamental and substantive social policies"—are a wash. The efficiency factor helps Terramax. Legacy has made no showing that a trial is likely to involve witnesses from Kentucky or the surrounding area. *See Aristech Chem. Int'l Ltd.*, 138 F.3d at 629. Nor has Legacy shown

19

that the transaction is "expressly" governed by the law of Kentucky. *See id.*; *see also* Suppl. Mem. at 14–15 (arguing that Kentucky law applies); Mem. of Law at 22 (arguing that Canadian law applies). So litigating in Canada could be more efficient than litigating in Kentucky. However, the public policy factor helps Legacy because this run-of-the-mill breach of contract case does not implicate "the procedural and substantive policies of Canada." *See Aristech Chem. Int'l Ltd.*, 138 F.3d at 629 (holding that exercise of specific jurisdiction over a breach of contract case was reasonable).

Almost all of the considerations (including all three of the most important factors) suggest that it is reasonable to exercise personal jurisdiction over Terramax. For that reason, this is not one of those "unusual cases" that overcomes the presumption of reasonableness. *See Air Prods.*, 503 F.3d at 554 (quoting *Theunissen*, 935 F.2d at 1461).

The Court therefore finds the exercise of personal jurisdiction proper.

### IV.  CONCLUSION

For the above stated reasons, **IT IS HEREBY ORDERED** that Defendant Terramax's Motion to Dismiss, Dkt. 5, is **DENIED**. This matter is set for a telephonic status conference on **December 15, 2021, at 9:30am Central Standard Time**. Counsel and parties must **call 1-877-848-7030** then give the **Access Code 2523122 and #**, then **when prompted press # again** to join the call.

**IT IS SO ORDERED**

*Thomas B. Russell*

Thomas B. Russell, Senior Judge
United States District Court

December 6, 2021